Call in case 17-4313, Imogene Shepherd v. Incoal Inc. et al. Oral argument is 15 minutes for petitioner, 15 minutes to be shared by respondents. Mr. Smith for the appellant. I'm sorry, for the petitioner. May it please the court, my name is Evan Smith. I'm here today for the claimant petitioner, Imogene Shepherd. And if I may, I would like to reserve six minutes for rebuttal. And I would like to thank the court for keeping your doors open today. And to Mr. Goldberg for being here, even though this is a federal employee, and a fair holiday for his employer. Ms. Shepherd's case has already been in litigation for a decade. Last year, when the Benefits Review Board erroneously reversed her award of benefits, that took away the $660 per month that she had been found entitled to and depended on to pay her bills. If you look at the IFP form that's at docket number five before this court, you can see that this money made a difference to her. The board made two errors. There's a factual error that, by the way, the Department of Labor agrees with Mrs. Shepherd on in this case. I'll just note that that is extremely rare to see in one of these cases for the agency's lawyers to agree that their appellate adjudicators made a reversible error. I won't go into detail about those facts. It's well briefed. I can answer any questions that the court may have. Then the second error that the board make is that they used months as a unit of time in measuring the number of years that Mrs. Shepherd's husband, Tramble Shepherd, worked as a coal miner. That's an error because the statute talks about years and the regulations talk about days. There's good legal support for using quarters, but there's no legal support for using months as a unit of time. And that's what this court dealt with in the Avery Coal v. Fleming case. The court issued two separate opinions in that. I was involved with the petition for rehearing before this court. And as this court also knows, it's very unusual for this court to supersede one of its published opinions. But that happened in this Fleming case, and it was about this issue of using months. Now, as I said, I'm happy to go into detail about both the factual error that the board made and that legal error that the board made about the units of time being used. But really, the more fundamental point that I want to make before this court, and really where this court's scope of review should end, is about looking at whether the ALJ's award of benefits here was based on substantial evidence when it found that Tramble Shepard worked as a coal miner for at least 15 years. There is a plethora of evidence to support that, and it's certainly substantial. We can start with the Social Security earnings statements. Then there's a sworn testimony of Mr. Shepard that he worked 17 years. You see that at Joint Appendix 36. Then there's the sworn testimony of Mrs. Shepard that her husband worked 15 or 20 years at Joint Appendix 47. There's Mr. Shepard's treating physician who said that he worked 17 years. You'll find that at Joint Appendix 42. And then in the claim that Mr. Shepard filed during his lifetime, the party stipulated to 17 years. And that stipulation was adopted and reviewed by the ALJ in that case. Now, I wholly agree with what the ALJ in this case did to say that stipulation is not binding. But it is evidence. It is in the record, and it supports the rationality of what the ALJ did in this case, which is to find that Tramble Shepard worked at least 15 years as a coal miner based on all that evidence, and therefore Mrs. Shepard is entitled to the 15-year presumption. Isn't the problem with her calculation of how long he worked, the widow's calculation, that the statute requires, if possible, to give the starting and finishing dates? And she didn't do that. And on top of that, what she remembered doesn't correspond to what any of the other witnesses may have thought. Thank you, Judge Juttry. So first to clarify, the statute does not require that. That is in the regulations, though. It's in the regulations at 725.101.A.32. If possible, give the beginning and ending dates. It's in the regulation? Yes, it's in the regulation, not the statute. And what the regulation begins with, and you're looking at subsection 2 there, it said to the extent the evidence permits. And as your question points out, there are differing accounts of Mr. Shepard's work history in the record of this case. But the important thing is not necessarily whether you should believe Mrs. Shepard or Mr. Shepard or the Social Security Administration or any other individual account. The important thing is that the administrative law judge, the finder of fact to whom such decisions are vested under this Act, reviewed all this evidence and made their own finding. And the place that I think really makes this clear, if you look at Joint Appendix page 190, that's the ALJ's last decision, he summarizes all the evidence that he looked at. And the judge points out all those different bodies of evidence that you talked about. Now, this is the one place where I have to disagree with my friend, Mr. Goldberg, in the Department of Labor. They say that the judge did not review this evidence, but the judge did. He specifically says that, and by the way, if you go back to the ALJ's first opinion in this case, he also says, I reviewed all the exhibits. Now, this court does not require ALJs, when they say they've reviewed everything, to then go back and show their work. That's what Monday's decision from this court in Wilkerson makes clear, that there are times when ALJs can be silent on things, to make implicit findings, and that does not require reversal. Now, the ALJ in this case wrote 113 single-space pages. There are dozens of those that are specifically about Tramble Shepard's coal mine employment. We do not need to have another remand in this case, years more of litigation, so that the ALJ can further show his work. Well, I thought one of the arguments you made in the brief was that the evidence put forth by your client, the claimant, the widow, as to her husband's employment history was not considered by the board, and if the board had considered it, you'd be over the 15-year prejunction. Yes, Your Honor. I think that's in your brief, isn't it? Yes, my point is that the ALJ considered it, the board did not. All right, but doesn't that itself require remand, because we're not fact-finders? That her evidence of her husband's employment may or may not be credible evidence, but we don't normally make such a finding on appeal. We usually let the fact-finder do it. Yes, Your Honor, I'm not asking this court to make a credibility determination regarding Mrs. Shepard. What I'm saying is that this board needs to merely reverse the Benefits Review Board, vacate its decision, which, by the way, should reinstate Mrs. Shepard's benefits. You're saying that the ALJ did consider Mrs. Shepard's evidence, even though the board did not, but we're in the ALJ's opinion that they specifically credit that. Her evidence, my understanding, contradicted her husband's employment history for the first four months of 1963 and the last month of 1964 and other places as well, and therefore is a conflict in the work history between her recollection and her late husband's recollection, and to me that's a classic finding of fact. But what the ALJ credited were the Social Security records, and so, again, there were multiple bodies of evidence that were relevant, and the ALJ chose one of them, the Social Security records, and that is substantial evidence. That should have been enough to affirm the ALJ's award. Instead, the Benefits Review Board made a mistaken factual determination that there was, as it says, that the minor's statements were self-reported and uncontradicted, but that was wrong, unfortunately. Mrs. Shepard did contradict them. Yeah, but because there's a contradiction, doesn't it need to be resolved? That's all. No, and my point is that on this narrow sub-issue, the ALJ was not required to spend another single-space page talking about this. The ALJ chose to credit the Social Security earnings statement. He didn't need to say anything further. The issue for us is simply whether the decision was supported by substantial evidence. I mean, there could have been conflicting evidence, and it wouldn't really be something we were supposed to look at on this appeal as long as the decision is supported by substantial evidence. Is that correct? Yes, Your Honor, and I see that my time is up, and so I will allow the other side unless there's any further questions. We're reviewing the Board decision here, are we not, as opposed to the ALJ's? Yes, this gets in— So whether the Board's decision is supported by substantial evidence is the issue, is it not? It's not. It's not? No, this Court's role is to determine whether the ALJ's decision is supported by substantial evidence, and in doing so— And we get no deference to the Board's decision? No, the Board does not get any deference. The Benefits Review Board was created to replace the U.S. District Courts in the statutory scheme, so the Board is not a policymaking body, it is adjudicators, and if you look at the standard of review portions of the opening brief, I believe I lay out the case law that explains that. If there's any further questions, I'm happy to go, otherwise I'll hand over my time. Okay, thank you. And my understanding is, Ms. Klaus, that you were taking 7 1⁄2 minutes, and then Mr. Goldberg is taking 7 1⁄2 minutes. That's correct. May it please the Court, I'm Laura Klaus. I represent the respondents in this case in COLE and its insurance carrier American Business and Mercantile Mutual. There is a dispositive finding by the ALJ in this case that resolves the dispute here. On page 191 of the joint appendix, the ALJ stated, because the miner provided both the month and year regarding the dates of his coal mine employment, and those closely correlate to the Social Security records previously provided, I give the miner's employment history form probative weight in determining the periods of his coal mine employment. The judge looked at all of the evidence, and he decided that it was Mr. Trammell's recitation of his history, which included the months and the year, correlated with the Social Security Administration earnings records, just as he found in his second opinion, which is... Did he have the claimant, the widow's version of the employment history, and did the ALJ reject it? Well, if you accept Mr. Smith's statement that the ALJ doesn't have to dot every I and cross every T, if the findings... I have a question. Did he have it, and did he consider it? Yes, he did. Okay. It's in the opinion that he rejected the widow's employment history. It's in his opinion that he accepted Mr. Trammell's. Now, if you accept that they're conflicting, he accepted Mr... Is it in his opinion that he rejected the claimant widow's version of his employment history? Not in so many words. If the answer is no, then okay. It's easily implied from his decision by saying that he credited Mr. Trammell's, as corroborated by the Social Security Administration records, and the submissions from the coal companies. Doesn't that itself require remand in this case? No, not at all. Because the judge made the findings necessary, and the board took those findings and said, okay, if we look at what the judge's credibility finding was, accepting Mr. Trammell's statement as supported by the Social Security earnings records. He made a mathematical mistake. Because what he did in 1963 was he credited the claimant with three quarters of employment in that year, when the account showed that he had no coal mine employment in the first four months of 1963. And he credited Mr. Trammell with an entire year of employment in 1964, when Mr. Trammell's statement, corroborated by the Social Security earnings records, showed that he had no employment in the last month. That .16 of added time brought Mr. Trammell under 15 years of coal mine employment. The board found a second mistake. In 1973, Trammell's account in the company's records showed that he started working for HITE in September 1973. The company's records showed that it was September 15th. What is the board supposed to be doing? What's its ultimate question? The board, like this court, will review the administrative law judge's decision to determine whether it's supported by substantial evidence, it's rational, and it's consistent with law. What the board found was that the ALJ's opinion had a mistake, a factual mistake, which it could correct based on the findings that the ALJ provided. And the board did correct it. There's no need for remand here. The litigation can end by the court affirming the board's decision, because the board's decision was imminently correct. It took what the judge gave him and applied it to the facts as they existed in the record. The court should review the ALJ's decision and could reach the same conclusion as it did in Avery, when this court found that the ALJ's findings made no sense. There are numerous other examples, which we pointed out in our briefs, both to the Benefits Review Board as well as to this court, that also would result in subtracting some coal mine employment from the total in this case. That would require remand because the board hadn't passed on those issues. I can't find it. I've been looking for it, but I thought there was somewhere in here where the estimate of the work or the testimony was that it was May to July. And apparently somebody said that's two months. It's May and June, but not July. And, in fact, it could be interpreted as three months, May, June, and July. Am I misremembering this? No. It's Mr. Shepard's testimony. It's in the joint appendix at page 20 and 23, where he said he worked for Alan Fork from May to July 1963. The Social Security earnings records showed employment in the second quarter in 1963 for that. What page again? That's page 28. So Mr. Shepard's account is at page 20, and the Social Security records, I think, are at page 7 to 8. That's where the earnings are recorded for 1963. I might be off a page or two because I have them merged together. Yes, page 7 of the joint appendix under, well, he's got multiple employment in 63. For Expert Coal Company, he has, in the third quarter of 1963, $168.41. In the fourth quarter, $560.49. Okay, thank you. The rest of the issues that the petitioner has presented to the court need not be addressed by the court if the court finds that the board was correct to actually fix the mathematical error in the ALJ's opinion. And for this reason, we ask the court to affirm the Benefits Review Board's decision and to finally put this case to an end. Thank you. May it please the court, my name is Jeff Goldberg. I'm representing the Director, Office of Workers' Compensation Programs. We are, frankly, less concerned with the ALJ's substantial evidence problem as we are with his in accordance with law problem. The regulation at 725-101-832 is very clear that the 125 working days has to be within a one-year period, whether that's a contiguous year or parts of a year, but you cannot establish a year of coal mine employment in less than a year. The preamble to the regulation makes that even more clear if there is any doubt. It says the regulation contemplates an employment relationship totaling 365 days, within which 125 days were spent working and being exposed to coal mine dust. Can you explain that to me? You have to be employed by that company for an entire year. Right. Do you have to be paid for an entire year? No. The employee-employer relationship must exist. If I took unpaid leave for my job, I would still be an employee of the Department of Labor. Supposing within that year you're employed by two different companies and you work for 125 days for each of them. You can claim only under one of those two periods? No. Then you would have a year of coal mine employment. It would just be with two different companies. If I worked for two different law firms in a one-year period, I'd have a year of legal work. So if I worked 125 days for a coal company but went off their books at the end of, say, November, I haven't worked a year for that coal company? I don't get a year's credit? No, depending when you started. But, no, you would have however long that relationship lasted. And then you'd also have to look at if you didn't actually perform any work during that period because on day one you broke your ankle, that would be different. But if you worked 125 days over an 11-month period, I think you'd have probably 11 months of coal mine employment, not a year. A year means a year. It means 365 days of being employed as a coal miner. Does that strike you as sensible? It does. I mean, 125 days is only what? How many weeks is that, five? Well, it depends how many days per week you are working. But as Mr. Smith pointed out in his brief, that comes from negotiations between the coal miners and coal mining companies, and the department adopted it as a reasonable estimation. But even that? See, I don't understand why the coal companies couldn't get real smart and start taking you off the books just in time for you to be denied a year's credit for working in the coal mine even though you had been working for 125 days. Well, I suppose in theory they could. I've never actually seen it happen. And we had to draw a line someplace. Some people are advantaged by this, those who had 126 days of coal mine employment, and some people are disadvantaged, those who had fewer. We had to draw a line. We drew a line that was acceptable at the time to both miners and coal mine operators. Because the plain language of the regulation supports our position and not what the ALJ did, the only support that Mrs. Shepard has really is this court's opinion in Barnett. And as we said in our brief, Barnett did not discuss the one-year requirement that at 725.101.A.32. That can't be ignored. It's a requirement that's been around for decades. And the ALJ failed to take that into account when he made his length of coal mine employment computation. I don't really have much else to say, so unless you have any questions, thank you very much. May it please the Court. If I may, let me kind of pick up where Mr. Goldberg left off. You know, it's always kind of ironic when, you know, there can be such disagreement about what the plain meaning of a regulation says. But this is a place where I think the Department of Labor is wrong about the text of its own regulation. I recognize what they said in the preamble, but there are a few things I have to say about this. So first off, for some context about why we care about years in the black lung benefit system, the length of years plays three important and distinct roles. First, when doctors are trying to understand how much coal mine does someone breathe and allocating the different toxins that these people have been exposed, the length of years matters. And epidemiologically, most doctors would just ask a patient, how long were you around? And as you see from the treatment records here for Mr. Shepard, that would be 17 years. The second thing that years does in the black lung system is it entitles certain claimants to these powerful statutory presumptions, such as the 15-year presumption that's at issue in this case. Congress created those as part of the remedial purpose of the Black Lung Benefits Act to make the system more fair to certain special deserving claimants, such as widows like Mrs. Shepard whose husband suffered from a respiratory disability prior to his death. And then the third role has to do with determining which coal company or their insurance carrier should have to pay for benefits. That's what we call the responsible operator inquiry. And a very thoughtful recent opinion on that was, Judge Daughtry, your opinion in the Andalex Resources case. That's a responsible operator case. Again, one of the inquiries was, and under that law, for a company to be liable, they have to employ the miner for a year. There's a lot of law that if you go back and talks about this kind of two-step test like Mr. Goldberg described for determining which operator can be liable. The period of employment has to be 365 days and then there has to be 125 working days. That's not what this case is about. And respectfully, I think that a lot of that law is based on an obsolete provision of the regulations and it's hard to square with the current text of the regulations. But anyway, the court doesn't have to go there for this. What the court needs to do is if you just look at the actual text of the notice and comment regulations, again, 725, 101, A32, then you'll see that it talks about there being 125 working days during a calendar year. It doesn't say a calendar year of coal mine employment. And the plainest way to read that is that you can get out your calendar. You look at January through December and if during a given year you can find 125 working days, then the miner has a year of employment, at least for purposes of the statutory presumptions. And that avoids, Judge Daughtry, the very point that you said could happen. You could start having coal companies that fire all their employees just before Christmas so that they don't have this 365-day period of employment during the year. And then, of course, if they rehired them, then you could add together the days across multiple years. But again, if you have a company, they could start gaming the system. And what this means, by the way, what Mr. Goldberg does not address is that he's saying that if you work 364 days, or I'm sorry, if you have a 364-day period of employment, the miner gets zero. But that's not what the regulation says. If you look at subsection 1 of the regulation, it says that if a miner worked fewer than 125 working days in a year, he or she has worked a fractional year based on the ratio of the number of days worked to 125. And also, when you look at subsection 3, it contemplates the miner's employment lasting less than the calendar year. Nothing in his explanation can explain those parts of the regulations. And that's why I must respectfully disagree with the agency on what this means. I try to get in my own mind this, the question of the proper interpretation of this regulation. It's a necessary issue because it ultimately affects whether the company is going to be able to do it or not. ALJ's opinion is not just supported by substantial evidence, but also whether he correctly performed the calculation in accord with . . . whether he did the calculation in accord with law. And the whole position of the defendants in this case really comes down to he did not because it's our interpretation of the Is that correct or incorrect? Yes, that's correct. And this question about how you read the regulation that Mr. Goldberg and I have kind of been going back and forth about, this is really a question about the scope of a remand. Because the Benefits Review Board did not talk at all about what should happen with Mr. Tramble's employment after 1978. Those are the years when Social Security stopped reporting quarterly earnings and instead the ALJ stopped reporting quarterly earnings. And used what I call the average earning method. This time when you divide the minor's earnings by the equivalent of the earnings you would get in 125 working days. And so what I'm submitting to the court is that what the ALJ very thoughtfully did in this case was proper. And that a remand is not necessary. Any remand should only be ministerial to reinstate the award. What Mr. Goldberg is saying is that a remand is necessary because there's an error. The only other thing I'll add is that as we talked about in our brief, the Department of Labor did not challenge the ALJ's award before the agency. In fact, they said that the ALJ's order should be affirmed. I think that there's a waiver issue here and that the Department of Labor should not be heard to criticize something that it did not before the agency. But I recognize that my time is up and so unless the court has any further questions, I appreciate your time. I think not. We appreciate the argument all of you have given and we will consider the case carefully.